Case number 24-5188, University of Chicago Medical Center, appellants versus Robert F. Kennedy Jr., Secretary, U.S. Department of Health and Human Services. Mr. Collins for the appellants, Mr. Lewis for the appellate. Good morning, counsel. Mr. Collins, please proceed when you're ready. Good morning, your honors. May it please the court, I represent the University of Chicago Medical Center, which I'll refer to today as the hospital, and with me today at counsel table is my colleague Bob Roth. The hospital has one of the largest resident training programs in the country. In this case involves Medicare's payment or indirect medical education costs, or IME as it's called, things like overhead rather than salary. Importantly, there's no dispute here about the correct amount of payment for IME that the secretary should be able to pay less than the correct amount based on by dismissing portions of the claims for alleged lack of jurisdiction. The hospital appealed two components of its IME, the resident count and the bed count, and I'll start with the bed count issue here. It's indisputable that the hospital claimed IME on its cost report. It's indisputable that the hospital claimed its bed on the cost report. It's also indisputable that the contractor audited the cost report and audited IME. It's also indisputable that the contractor audited the bed count and adjusted the bed count on the cost report. And so the hospital's bed count appeal squarely falls into the line of cases stretching all the way back to the Bethesda case holding their jurisdiction under 1395-00A. But the cost reports that the hospital submitted contained an irreconcilable conflict. And that is because the hospital mistakenly had included eight beds which were from a non-reimbursable cost center that was called clinical research. But the hospital was only half wrong in its submission because it also identified the clinical research center as non-reimbursable and did not receive any payment for those costs related to those. And when the contractor audited and adjusted the bed count for other reasons, it failed to remove the eight non-reimbursable beds. And that left in place this irreconcilable conflict. The board dismissed the bed count issue stating it had no jurisdiction under 1395-00A. But even if it did, it would decline to exercise that jurisdiction under 1395-00D based on its past decisions and cases routinely doing so when a hospital fails to claim costs on cost report. The board's dismissal was unlawful and it was pretty radical. Every court case the board relied on involved situations where hospitals did not claim costs on the cost report. And that's a situation where, of course, the contractor has no opportunity to award the costs where it's not presented, which is what the Bethesda case talks about. It's never presented to the agency. But in contrast here, the hospital included its claim for IME in the cost report, it included its bed count in the cost report, and the contractor actually adjusted the very item that the hospital later appealed. The statute, 1395-00A. How much does that part of the factual background matter to you? I mean, in other words, suppose that it's undisputed that had everybody been on notice about this bed count issue, then the contractor would have understood that, oh, actually, that's true. It's off by eight. We should reduce it by eight, and that will up the amount that you get back, that that would have happened. But that wasn't raised to the contractor. It wasn't raised in those terms. Yes, there was information given to the contractor from which the contractor could have made that conclusion on its own. But the particular point that there's an eight-bed discrepancy obviously wasn't flagged. Right, that wasn't flagged in so many words. So if that's true, then is your argument that no matter what, regardless of this other information that was in the record from which the contractor could have drawn the correct conclusion, that the mere fact that there's discrepancy and everybody understands that there's discrepancy and that the hospital was dissatisfied with the total amount that it received and therefore levied the requisite action, that that's enough and that then the board at that point was required to make the correction? Yes, that's correct, Your Honor. I mean, under D-95-00A, the hospital met all the requirements for presentment. And in fact, the district court's decision mischaracterized the record in the district court's ruling. The district court said that the hospital did not present any facts forming the basis of its claim that it operated fewer than 417 beds. But in fact, the cost report on its face has the beds are identified as from the clinical research center, eight beds. The clinical research center is identified as non-reimbursable. So the contractor gave the hospital the worst of both worlds. It accepted that it was non-reimbursable, reducing Medicare payment generally, but left in the eight beds and reduced the IME payment specifically. So that under the plain words of the statute, as interpreted by FESTA, the hospital satisfied its presentment requirement of its claim. So could the agency, is your view that because of the way the statute's worded, that the agency just period cannot have a rule that says if you fail to present a discrepancy in some way to the contractor, then you're out of luck for the board? Well, first of all, the agency doesn't have that rule. We believe that, you know, in our papers. But I'm asking you, could the agency have that rule? I think that would override 1395-00A statutory language. I don't think they could. I don't think there's no way that the agency could say you have to present an issue to the contractor in order to preserve it. Your Honor, the FESTA said you have to present an issue. And so I think this is very different than the situation where a hospital omits a claim, just completely omits information that the contractor and that the Medicare program could use to pay them correctly. But when the claim is submitted on the cost report, there is an error when the contractor is obligated to audit and, you know, do a decent job providing correct Medicare payment. Medicare statute has to be read to provide an appeal right there because otherwise hospitals literally have no opportunity to correct an error made that they make on their cost report because there is no obligation for a contractor to accept an amended cost report. There's no obligation for a contractor to reopen. That's purely discretionary. That's not statutory. That's something that they offer by grace. So this means... But if that opportunity is available and it wasn't taken advantage of, then is the agency barred from having a rule that says you had an opportunity to bring something before the contractor's attention, didn't take advantage of that opportunity, and having not advantage of that opportunity, it's not something that can be brought to the board? Well, there is not... You're assuming that you have that opportunity. You don't. You hypothetically could receive... You could submit a new cost report and it could be accepted, but that's discretionary. You're not entitled to do that. So you can't... If a hospital makes a mistake, if the rule is... If there were a rule that said you can never correct it, I think that violates 1395-00A. I don't think that's permissible under Bethesda. And here... And it would depend entirely on the caprice of the contractor. When the contractor reviews the cost report... I guess what I'd be envisioning is if there's an opportunity to present it to the contractor... And you may be right that the contractor doesn't have to look. Let's just suppose the contractor, for whatever reason, gets a corrected cost report that says, oh, by the way, eight beds are off. This is 600... There's more than $600,000 at stake. I ought to take account of that. And the contractor, for whatever reason, declines to do that. Then the board might be hard pressed to say, because the contractor, for whatever reason, decided not to engage with it, we don't have to engage with it. But it seems different to me to say... For the board to say, you at least have to raise it and give the contractor the opportunity to consider it. And if you didn't do that, then we don't have to take account of it. And the question is, what does it mean to raise it? And our position, and I believe it's the correct one, is submitting it on the cost report, demonstrating all the information is there for the contractor to come up with the right outcome. The contractor failed to come up with the right outcome. And that's where the appeal rights come in. So you're saying that the way... So Bethesda says, providers who fail to request from the intermediary reimbursement for all costs to which they are entitled under applicable rules, that the failure to request the cost that they're entitled to might establish that they're satisfied. And you're saying that's not this case, because the cost amount that you requested was only supported if the intermediary corrected the bed error in the one part of the submission, right? In other words, you requested... It doesn't establish that you were satisfied because it doesn't support the number that you asked for, the it being the erroneous bed count in the relevant part of the submission. Correct. So you're saying that you couldn't have been satisfied because the number should alert them, together with the contrary treatment of bed counts in where the submission identifies non-reimbursable beds. That's correct. You're putting those three things together that, yeah, there's an error in the bed count, but elsewhere when reimbursable beds are tallied, it's correct. And the number that the hospital is requesting would only be the correct number if that correct bed count were consistent throughout. That's correct, Your Honor. I mean, it's a little bit tricky, I understand. And really, the statute says you have to be dissatisfied with your total program reimbursement. The language says that. Bethesda read into that. And actually, that's the dicta of Bethesda. Bethesda was not that case. It talks about presentment, the importance of presenting. That's the key. Let's suppose that you didn't even raise this argument before the board. And then you filed an action in district court. Would the district court be required to adjudicate the validity of counting the beds when it wasn't raised even before the board? No, Your Honor. No. I mean, that's clear. That is very clear. And the reason is we have an exhaustion of administrative remedies rule. It's not written, necessarily. Some statutes write it. Why can't the board have the same kind of rule? Well, the board, Bethesda says that what's important is the hospital. This is exhaustion. It may be, as Judge Breyer said, there are situations in which it would be proper to consider it. But nevertheless, as a general rule, the board is requiring exhaustion. And you didn't exhaust your remedy before the intermediary. I disagree with that conclusion that we didn't exhaust because the hospital presented, the hospital sought its full IME payment. It presented the information to the contractor. It's all in the cost report. So Bethesda says you must present. We presented. I don't think the board can adopt its own separate pre-exhaustion requirement because there's nowhere in the statute that would support that. If the board, if there were to be a rule and the board has actually, CMS has created a rule that says you must claim items on the cost report that are reimbursable. That rule doesn't even say no mistakes are allowed. I thought there's a rule in place now on a going forward basis that requires presenting something to the fiscal intermediary, to the contractor. It does, but it doesn't say, oh, and by the way, if you make a mistake, it's set in stone forever. It doesn't say that. It doesn't have a perfect, and if that were the rule, hospitals would have to invest even more money than they already invest in preparing their cost reports. I mean, they obviously try to be careful and avoid mistakes, but the rule here makes no sense. So the rule that's in place now on a going forward basis that was promulgated through the federal register, you think that that rule can't be enforced across the board? No, that rule is in place, but it doesn't have a no mistake rule. It says you have to claim items that you want reimbursement for. You claim an item, you can get subsequent reimbursement. So that rule does not say if you make a mistake, you won't get reimbursed. You think even if that rule were in place at the time that the facts of this case arose, it wouldn't result in your not being able to get the... Yes, I think we would have satisfied that rule. And just quickly, let me turn to the dismissal of the resident count sub-issues. Most critically here, the government treats them kind of monolithically in its briefing, but the last three of them are all carry forward statistics from past years. Those are all inherent and indivisible from an appeal of IME. And the IME payment's different than other issues like DISH, which this court considered in Battle Creek. It's all in the present year. All the statistics come from the present year. IME, it's all three statistics from past years, based year resident count, prior year resident count, and penultimate year resident count. All of those are statistics that you don't appeal in a current case, but fortunately, the secretary has the good sense to direct your contractors that they must automatically update those in an open appeal. So here, when the University of Chicago Medical Center had appeals stretching from its base year 1996 to 2007, separate board appeal, each challenging its IME payment, the board held the cases in abeyance for 10 years, waited until the base year issue was determined, which was determined by the Seventh Circuit in 2010, that research time counts, which means the base year went up by almost 50 residents, and every year's resident count went up proportionately, and each prior year's resident count impacted the successive year. So when the hospital filed its position paper, it just explained, oh, and by the way, you will need to update the prior year's statistics. The contractor out of the blue called these sub-issues, and the board agreed. It's unprecedented. This is not, these aren't issues that the hospital was even permitted to appeal in its board case. The board rules specifically prohibit you from appealing. It's like, it's kind of like claim splitting in court. You can't sue on challenging one transaction in one case, file a later case that says, oh, by the way, I'm also challenging that same transaction in the later case. But can't you say, you know, we have an appeal pending on this, this would have to be adjusted accordingly, you know, to flag it for the the board on appeal. The way that it's described in the record in this case, and by the district court, is that it just wasn't, there was a specific mention about the training time, and the research time, but not about the rounds or whatever, and the vacation time, and so that there's an inconsistency in terms of how specific, and is your point that all of those things were were subject to the prior litigation, or only the ones that that the intermediary omitted? So two of them were the ones you just identified, the vacation and the additional rotations, those were new time to be added to the present year. Those are different than the carry forward issues. The carry forward issues are ones that are not things that could be litigated, and they couldn't be raised as separate issues in the appeal in the first place. So it wouldn't make any sense to say, oh, and by the way, you have to follow the law later to update these statistics. And when the board fought, when the hospital filed this appeal in the, you know, I don't know, say 2005, those prior year statistics weren't, you know, weren't in dispute. Those were being disputed in each case, but they were not improper. The contractor had applied the correct prior year statistics to determine the IME payment. The problem was those statistics later got updated through the court litigation. Mr. Collins, before you sit down, what is an IPPS? That's the Inpatient Prospective Payment System. What is an ACA? That's the Affordable Care Act. And what is an NPR? That is a Notice of Program Reimbursement. And what is the CRC? That's the Critical Research Center. And what is a DSH? That is Disproportionate Share Hospital. They're all abbreviations. We have a rule here, and none of them are in your glossary. So your brief is in violation. You were talking about violating rules. Your brief is in violation of a court rule. Well, I'm sincerely sorry for that, Your Honor. I thought we had covered all our acronyms in our glossary. Well, you obviously didn't. Each one of these abbreviations is in your brief, and they're not in the glossary. Well, that's a big oversight on our part. And annoying, too. I understand. In order for us to understand a sentence that uses an abbreviation, we have to memorize what that abbreviation means. And in reading all the briefs for today and for the other days, it's almost impossible to do that. So we have a rule, and the rule is the glossary. At least we can look at that quickly without having to go back 40 pages to see where you first defined it. You're absolutely right, Your Honor. And I take that under serious advisement. The last thing I'll just mention on the vacation time, that was Congress made that lawful to be in the IME payment in the Affordable Care Act in 2010. So that wasn't something that could have been raised back when the appeal was filed originally. It could not have been raised when the appeal was filed. Correct. And it wasn't raised on, well, never mind. We'll give you a little time for rebuttal. Thank you so much. Mr. Lewis. Thank you, Your Honor. May it please the court. Ben Lewis for the government. The Medicare Act gives the board the authority to establish procedures to carry out its responsibilities, and the board properly enforced its procedural rules here. In addition, the board also properly declined to hear a claim in circumstances where the provider itself was responsible for providing incorrect information on its cost report. It's important to the board that providers properly develop their claims, and the provider did not do so here, so the board should be affirmed. Briefly on the resident count issue, on the carry forward items that the other side discusses, those are laid out on pages 7 and 8 of the appendix to our brief, and they're just additional statutory factors that bear on the resident count for the current fiscal year. So the first, for example, on page A7, that's the 1996 full-time equivalent residence cap that they discuss. And it says that full-time equivalent interns and residents, that the total number shall depend on, sorry, shall be capped with respect to the hospital's most recent cost reporting period ending on or before December 31st, 1996. The next two provisions deal with this kind of rolling average that they discuss, where the 2002 resident count depends in part on 2001 and 2000. The relevant provisions also discuss the resident-to-bed ratio that depends on the prior year. All of these things are just additional statutory factors that bear on the current resident count year, and they're not different in kind in any way from the research time or the training time or the vacation time or the clinical rotation time that may bear on the fiscal count for a current year. There's no reason why the other side couldn't have done it. I mean, what this is going is that this, the information was there with which this issue could have been. Yes, the request for a hearing adequately presented the research and training time because it identified the resident count and then gave a reason why that count was an error. One sentence explanation, because the contractor excluded the research time that bears on the count, they could have included the same type of one-sentence explanation that has a because clause that says that we understand the resident count in 2002 to be an error because the cap for fiscal year 1996 was inadequately calculated. And they had all the knowledge they needed at that time to present that claim. The other side is very forthcoming in their brief that it was only after consulting with a consultant about additional information that they might have raised that they decided to make these additional attempts at presenting claims of error. What about the vacation time issue? They're, you know, they make a compelling case that the Congress retroactively allowed it to be included in the IME. And so how, and that happened after? So my understanding of the record here is that there's no reason why they couldn't have presented a claim that, it's true that Congress conclusively said that the vacation count would have counted towards them, but if they thought, and I'm sure that hospitals were pressing this argument at the time, that residents should have, that vacation count should residents count. If they wanted to press that claim before the board, then it was appropriate for them to do so through the procedural rules. I mean, something that's not supported by current law and that you're probably, or, you know, trade association is advocating for in Congress. And, you know, as you know, lawyers make credibility and determination all the time. Am I going to make a weak argument that I know is a loser? That's the best you can do? Well, that's how would get the law changed to the courts is through judicial review of the board decision. But to be frank, my understanding, I think of this retroactivity point is, and what the record was at that time with respect to the vacation time is a little murky. So I don't want to get ahead of myself on exactly the status of how the agency considered vacation time. And to the extent that that is a crucial argument that bears in the course analysis, we'd be happy to submit a to take it on bank, even though it's foreclosed by the president. Exactly. There's again, there's no reason why they couldn't have included one sentence in their request for a hearing. And these, these rules are important to the board. They allow the board to narrow the disputes before the parties and for the parties to resolve issues before it gets to the board and board benefits greatly from having the most developed version of the argument before the at that time, just briefly on the argument that they couldn't have raised these issues before the board because the board's rules prevent duplicative litigation. That only applies to same issues for same fiscal years. It's commonplace for a provider to say in one litigation that it's challenging the research time as to fiscal year 2001 and then to say for fiscal year 2002 to bring the same type of claim that research time wasn't properly excluded by the contractor. There's nothing in the board's rule that would have prevented prevented the other side from presenting these types of additional claims with respect to the residence count so long as they were properly presented in the rules. And just to be clear, the rules are quite clear here that the regulations in both the rules required not only the provider to identify the aspects of the determination with which their providers dissatisfied, but explain why the provider believes the determination is incorrect in such particulars. And even setting aside their brief about why they have properly identified an issue, there's just nothing in any of their claims that would have put the board on notice that the reason why they thought the resident count was an error was because of these additional claims that they attempted to bring. Turning to the bed count issue, I think it would be useful to start by just clarifying the record on whether or not the contractor would have been on notice that the provider had made a mistake. So I think there's a little bit of confusion here. They rely on worksheet A, they call it, to say that the contractor would have known that there was an irreconcilable dispute between the bed count that they provided to the contractor and then what they had excluded as non-reimbursable in worksheet A. Worksheet A does not have a line item that says that there are eight beds in the clinical research center that are not reimbursable. It's a list of different cost centers in the hospital, and there is a leftover bucket of non-reimbursable cost. It's not broken out into the level of granularity that would say that here are these beds that we think are non-reimbursable. And to be frank, it's not even broken out in terms of the non-reimbursable cost centers. It doesn't say that the clinical research center itself is non-reimbursable. There's just a leftover bucket of non-reimbursable cost that the provider is not claiming. So there's nothing from worksheet A that would have put the contractor on notice that there was a problem with the bed count. And then with respect to what they did submit for the bed count, this is on pages 250 to 260 of JA. It's in a couple of places in the JA, but the first two pages of that section are what the contractor did on their worksheet, and then the rest of it is what the provider submitted to the contractor. And if you look at it, there's nothing, again, on that sheet itself that would have indicated that any part of the bed count was non-reimbursable. And so from the contractor's perspective, they have a count from the provider, and even assuming that there were a line item on worksheet A that said that there are eight non-reimbursable beds, they don't know, having received the count from the provider, whether those non-reimbursable beds have already been taken out or whether they're meant to be by the contractor afterwards, there's nothing from the contractor's perspective that would put them on notice that there was some negligent information that they had received. And so I just think the other side is significantly overstating the ability for the contractor here to identify that the provider had made a mistake. So even if it was a situation in which, I'm not going to go through all the details to construct the exact hypo, but if it was a situation in which there's not a line item that puts the contractor immediately on notice, but a particularly perceptive contractor could look at various things in various places and think, wait a second, it's possible there's a discrepancy here. Maybe I should figure that out and pose some questions, which I assume that could happen. And even on those circumstances, we think the board will still say that, no, that's not enough because per the board's decisional precedent and its adjudications, something has to be flagged to the contractor with enough specificity that the board will have the benefit of the contractor's analysis. Yes. The board was perfectly reasonable to say, even in a circumstance where the contractor would have been on notice that the fact that it's the provider that had been negligent in providing its information to the contractor is reason enough to not to hear the appeal. And I think the placing of the burden on the provider rather than the contractor makes perfect sense in these circumstances. If I can just understand your position on how that intuition gets actualized under the statute. I know that there's an argument that there's a dissatisfied threshold and that this satisfied threshold can't be met where the provider itself has the wrong information in what it submits. Suppose I'm not persuaded by that.  Okay. Just assume that. I know you'll resist it, but just assume it for present purposes. Then there's the fallback position, which is that, and that's what the district board focused on, which is, look, still this particular discrepancy wasn't flagged for the contractor. And in that circumstance, what? Is it that actually there's not jurisdiction? Is it that actually there's jurisdiction for the board to consider if it wants to, but it doesn't have to. It can have a processing rule that it puts in place via adjudication that says, you got to flag things for the contractor. If you don't, we don't have to take them up. We might, we could, but we don't have to. And in the main, we're not going to. Is that where this is that it's not jurisdiction? It's not that there's a lack of jurisdiction or even sometimes it's referred to as a refusal to exercise jurisdiction to the extent that that's the same thing as saying you have a procedural default rule that you have to bring it before the contractor. And if you don't, then we have the discretion just not to engage on it. Then sure. But what exactly is your understanding of the fallback position? So, assuming that the provider has demonstrated that they're satisfied and that the jurisdiction of the board is met jurisdiction and kind of colloquial sense, not in the judicial sense, that the statute authorizes the board to have discretion and to exercise that discretion of whether or not it wants to hear an appeal that comes from section 1395-00-D, which says that the board shall have the power to affirm, modify, or reverse a final determination under certain circumstances. And as we explained in our brief through the case law we cite and as well as the legislative history, that is a discretionary power for the board to exercise or decide whether or not to hear a claim by a provider. And that understanding that it's discretionary is also supported by surrounding language that says that it can accept such other evidence as may be obtained or received by the board. That also supports that it's a discretionary power. So, they have this discretion. The other side's statutory argument that essentially the abstention of the board is contrary to the statute, I think just fails in light of the plain language of the statute. And then their secondary argument that... So, why are you relying on D for that and not E? The board shall have full power and authority to make rules and establish procedures. In this context, the board decision, what it described was its practice. It had adjudicated... You're saying E just has to do with actually like adopting rules. Right. The board here, it didn't promulgate a rule and it later did promulgate some rules that bear on this question. But at this time, through case-by-case adjudication, it said we have a practice that we're not going to hear these kinds of disputes where the full request was not presented to the contractor. And there's no reason to depart from that practice under these circumstances because we understand the claim of the provider to be based solely on information that it itself provided to the contractor. It can't then go around afterwards and say, actually, we think that information was incorrect. It's a result of their negligence. Some sort of rule, even if it's a procedural rule. I don't read 1395-HHC1's requirement of federal registered publication as limited to substantive standards, which I take it to be your argument. So I think our top line argument on the notice and comment question is that it's just not a rule or regulation or the type of standard that those provisions are contemplating. If you read the board decision itself, it says that we have a practice under these circumstances to not to abstain and we're not going to depart from that practice. It's the same type of practice that I a typical adjudicative body has to not hear a claim when it's not properly presented to the- But I thought the question is not about notice and comment, but it's about publication of the federal register. Oh, sorry. Sorry. I apologize. Yes. So then there's a federal register. I think the same argument applies to the federal register argument, but they say that, I think briefly in their reply brief, that they are prejudiced by the failure to publish. And that just can't be true. There were prior board decisions that we have cited in our brief that were available to them at the time that had already announced that practice. What's the Q1, or where should I look? I believe affinity or- There's interest on everything. What are you looking for? Board decisions that would have put them on notice even in the absence of- Affinity Medical Center versus Blue Cross Blue Shield Association National Government Services, which was precisely the same scenario that we have here where the- Where is that cited in your brief? I'm not seeing- Sorry. Page 43 of the brief. In the table of contents. Yes. Apologies for that. 43 to 44 are the discussions of the prior board adjudications. And so affinity explained that where the hospital included a number of beds on its cost report, and the intermediary did not adjust, the board declined to hear the appeal for the exact same reasons. And so at the very least, even if they would try to distinguish that case on its facts, the analysis looks very, very similar to what the analysis was here. The board announced a practice that it wasn't going to hear these issues under similar circumstances. Do you read the federal register provision just not to apply to standards like this that are announced by adjudication? I do read the federal register. It refers to the promulgation of- Yeah. It says a list of all manual instructions, interpretative rules, statements, policy, and guidelines of general applicability, which are promulgated to carry out this chapter. There was no promulgation of the sense that that kind of provision is talking about. So your view is that the board just has inherent authority to adopt rules like this that- I'll call them rules. I get that that's a term of art, but to adopt standards like this that organize its consideration of issues so that it can do things in an informed way. And one of those standards is that, look, you got to present something to the contractor. Yeah. I wouldn't even call it a standard here. I think this is really a site-specific analysis for case-specific reasons based on the provider's negligence. And so it doesn't even- But one of your points is that the board consistently does this. And so in that way, it's not- It has done it before, through prior cases, but it's not as if that's binding precedent on the subsequent board and that the board couldn't depart from a practice for case-specific reasons. And then, yes, I'd say our second line argument is- So for that part of it, the board has the inherent discretion to do these kinds of things in adjudicating a particular case. D of the statute just kind of encapsulates the existence of that kind of discretion, but the board just has that kind of discretion as an inherent matter. Yes. I think even if there was no statute- D provision that the board, by virtue of being an adjudicative body, can adopt the kind of practice that, yes, that as judges- The federal register requirement, because that one only, in your view, applies to the promulgation of rules by the agency, not the decisions and adjudications by the board. Correct. In order to analyze and resolve disputes, the board has to decide whether an argument was adequately developed and whether it was adequately presented. And that often involves the kinds of judgments that are made here. Yeah. Kind of like in your first brief, you've got to flag an issue. Otherwise- Exactly. And if all of those decisions were published in the federal register, it would be even longer than an argument. If there are no further questions. Thank you. Mr. Collins, we'll give you two minutes for a rebuttal. Thank you again, your honors. Just the, first, the carry forward question that the secretary has never denied that the contractor is obligated to automatically update those factors. So, he forgot to mention that. So- Obligated, even if it's not ever identified to them as something- Right. That's outstanding or that you're asking. The secretary's statement in the federal register is very clear. It says, the contractor shall update those numbers and apply them to subsequent open cost reporting years. And that's cited on page 34 of our brief federal register site. Is open cost reporting years, does that refer to matters that have not already been submitted to the fiscal intermediary and or appeals to the board? It means if a matter has been, if it's open because it's not due yet, or if it's been submitted through a board appeal, that's considered open. And the appeal of the resident count, you can't get a correct resident count in the present year without the past year's statistics. So, it has to encompass those past issues. The board's rules in no way, shape, or form told providers that they needed to delineate every single aspect, every variable, if they wanted to appeal the resident count. Never. And more recently, they've gotten more nuanced, but not at the time we filed their appeal. So, they can't spring this on us when it's way too late. The vacation time and the are necessary to get the IME payments right. And the board is sitting here with an appeal where it's correcting numerous issues. That is the poster child situation where the board should exercise subsection D authority. That's an expansion of its authority. The board reads that as off limits. We will never use that for any provider in any situation. They read that out of the statute. But to the extent they rely on, they also rely on discretion, no? Right. And the board's, all of the board's precedent dealing with what providers have submitted on the cost report involves situations or what they have, it always involves unclaimed costs. And the one precedent that was in existence when the hospitals filed their appeal and when they filed their cost report was Mayo. The Mayo case permitted a hospital to correct, through a board appeal, an error that it made. In 2010, the affinity case that they referred to, that my friend on the other side referred to, that was 2010. The board changed its position. That was long after we had filed our appeal. So, there was nothing, there was nothing, hospitals could not know that this was something that they needed to do. Likewise, just that when the contractor asserted the argument that these were, that you could not correct, you can't appeal an item that needs to be corrected. Taking the past decisions of Little Company, Mary, all those decisions one step farther, that was after the hospital could even ask the contractor for reopening. They filed that issue out in 2006 when they were still within a three-year reopening window. The contractor waited until 2013 to spring that jurisdictional defense on the hospitals. May I just mention one important thing relating to the bed count? Okay. Council represented that it was completely hidden somehow. It was on Worksheet A. But, first of all, the board's decision references, never addresses, the fact that there's this conflict on the face of the cost report. We cited that. The administrative record actually shows the work papers that were filed with the cost report. It is delineated. There is a line. Can you just point us to the page and then we'll do the work? They're in the administrative record. They're not in the joint appendix. In the administrative record, and we could submit this as supplement if the court would like, they're page 312 and 309. Those beds are specifically identified and the cost center is specifically identified as non-reimbursable. It's not just mixed in with everything else. Okay. Thank you, Council. Thank you to both Council. We'll take this case under submission.
judges: Srinivasan; Pillard; Randolph